UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

-------------------------------------------------------------X
GENE SEBASTINO,

                Plaintiff,                    16 Civ. 30007 (MGM)

   -against-

SPRINGFIELD TERMINAL RAILWAY CO.,

                Defendant.
-------------------------------------------------------------X

PLAINTIFF'S OPPOSITION
TO DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW

                                              Marc Wietzke, Esq.
                                              Flynn & Wietzke, PC
                                              1205 Franklin Avenue
                                              Garden City, NY 11530
                                              (516) 877-1234

An employer may be held liable under the FELA "for risks that would be too remote to support liability under common law." *Syverson v. Consolidated Rail Corp.*, 19 F.3d 824, 826 (2nd Cir. 1994). In FELA actions, the right of the jury to pass on factual issues must be liberally construed. *Gallose v. Long Island Railroad*, 878 F.2d 84-85 (2nd Cir. 1989). It is well established under the FELA that "the jury's power to draw inferences is greater than in common law actions." *Burns v. Penn Central Company*, 519 F.2d 512, 514 (2nd Cir. 1975). Plaintiff's burden in an FELA action is, therefore, significantly lighter than it would be in an ordinary negligence case. *Williams v. National Railroad Passenger Corporation*, 161 F.3d 1059 (7th Cir. 1998).

Under the FELA, a traditional concept of proximate cause is supplanted by a less stringent standard. *CSX Transport., Inc. v. McBride*, 564 U.S. 685, 691-92 (2011). Under the FELA, a railroad is liable to its employee if that railroad's negligence played any part, even in the slightest, in producing the injury. *Id*. The relaxed causation standard reflects the remedial goals of the FELA:

> FELA's language on causation…'is as broad as could be framed.'…Given the breadth of the phrase 'resulting in whole or in part from the [railroad's] negligence,' and Congress' 'humanitarian' and 'remedial goal[s],' we have recognized that, in comparison to tort litigation at common law, 'a relaxed standard of causation applies under FELA'…

*Id*. (citations omitted); <u>see also</u> *Conrail v. Gottshall*, 512 U.S. 532, 542-43 (1994) (the FELA is to be liberally construed to further its remedial goal of compensating injured rail workers). In FELA actions the right of the jury to pass upon the question and fault and causality must be liberally viewed. *Eaton v. Long Island R.R. Co.*, 398 F.2d 738, 741 (2nd Cir. 1968). Under the FELA, "the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes." *Rogers*, 352 U.S. at 506.

There need not be direct evidence of negligence to create a triable issue for the jury. Courts have repeatedly held that in FELA cases the element of causation may be established through circumstantial evidence or common knowledge, and that direct or expert testimony is not required. E.g., *Lynch v. Ne. Reg'l*

*Commuter R.R. Corp.*, 700 F.3d 906, 916 (7th Cir. 2012) (citing *Missouri Pacific R.R. Co. v. Kansas Gas and Elec. Co.*, 862 F.2d 796, 800 (10th Cir. 1988) (a case can rest entirely on circumstantial evidence and still be sufficient to reach the jury under FELA); *Gibson v. Elgin, Joliet & Eastern Ry. Co.*, 246 F.2d 834, 837 (7th Cir. 1957) (burden met if there is proof, though entirely circumstantial, from which a jury may with reason make the inference).

As recognized by the United States Supreme Court, "[j]urors are supposed to reach their conclusions on the basis of common sense, common understanding and fair beliefs, grounded on evidence consisting of direct statements by witnesses or proof of circumstances from which inferences can fairly be drawn." *Schulz v. Pennsylvania R. Co.,* 350 U.S. 523, 526 (1956). "And a jury should hold a master 'liable for injuries' attributable to conditions under his control when they are not such as a reasonable man ought to maintain in the circumstances," bearing in mind that "the standard of care must be commensurate to the dangers of the business." *Wilkerson*, 336 U.S. at 61 (quoting *Tiller v. Atlantic C.L.R. Co.,* 318 U.S. 54, 67 (1943)).

*Gallick v. Baltimore & Ohio R. Co.*, 372 U.S. 108 (1963), which was recently reaffirmed in *McBride*, 564 U.S. at 697, is one of three seminal cases from the United States Supreme Court that illustrates the extent to which circumstantial evidence will suffice to support an FELA cause of action. Gallick was working on the railroad's right of way when he allegedly was bitten by an insect. The wound from the bite became infected, and the infection spread, resulting in the amputation of both of his legs. None of the doctors who treated Gallick could explain the etiology of his condition, but some of them characterized it as secondary to an insect bite. 372 U.S. at 109-10.

Gallick filed suit against the railroad under FELA, claiming that the insect bite occurred as he was working near a fetid pool containing dead and decaying rats and pigeons, which condition had existed for many years and of which the railroad had knowledge. *Id*. He argued that the pool of stagnant water attracted insects and resulted in the bite and subsequent infection. *Id*.

The jury returned a verdict for Gallick. *Id*. at 109. However, the appellate court held that a jury could not reasonably find the railroad liable because there was no direct evidence that the insect had any connection with the pool of water or evidence which would negate alternative possibilities that the insect "had emanated from 'the nearby putrid mouth of the Cuyahoga River, or from the weeds, or unsanitary places situated on property not owned or controlled by the railroad.'" *Id*. at 112. Therefore, the court concluded that the evidence was merely a series of guesses and speculations – a chain of causation too tenuous to support liability. Id.

The Supreme Court reversed, holding that the appellate court improperly invaded the function and province of the jury, and that there was sufficient evidence to warrant the jury's conclusion that the injuries were caused by the railroad's acts or omissions. *Id*. at 113. Specifically, the Supreme Court held that the appellate court erred in requiring either direct evidence that the insect had a connection to the fetid pool, or more substantial circumstantial evidence than that the pool created conditions that furnished an environment to attract and infect such insects. *Id*. at 114. The Court noted that in FELA cases, the role of the court is not to search the record for conflicting circumstantial evidence and to take the case from the jury because the evidence equally supports inconsistent and uncertain inferences. *Id*. at 114-15. Instead, it is the function of the jury, not the court, to select among conflicting inferences and conclusions. *Id*. at 115.

The United States Supreme Court reached a similar conclusion in another FELA case where it was alleged that a switchtender's death was attributable to the railroad's negligence. In *Lavender v. Kurn*, a switchtender was found unconscious near the track and died as a result of a fractured skull. 327 U.S. at 648. An autopsy revealed an injury to the back of his head made by a fast moving small, round object. Id. at 648-49. The plaintiff's theory was that the switchtender was struck by the end of a mail hook hanging down loosely on the outside of a mail car on a backing train. *Id*. at 649. The plaintiff introduced circumstantial evidence that the mail hook could have hit the decedent if he were standing on a mound of dirt. *Id*. The railroad contended that the mound was too far away from the track for the hook to have reached the switchtender's head. *Id*. at 649-50. Instead, the railroad theorized that the man had been murdered by tramps in the area. The Court held

that there was sufficient evidence of causation to justify submitting the case to the jury because there was evidence from which a jury could infer that the mail hook struck the switchtender. *Id*. at 652.

Further, the Supreme Court acknowledged that there was evidence indicating that it was physically and mathematically impossible for the hook to strike the switchtender, and that there were facts from which one could infer that he had been murdered. *Id*. However, the evidence indicating that the hook could have reached him was sufficient to allow the case to go to the jury. *Id*. The Court explicitly rejected the notion that the speculative nature of the inquiry should prevent submission of the case to the jury. *Id*. at 653 ("It is no answer to say that the jury's verdict involved speculation and conjecture. Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference.")

Finally, in *Tennant v. Peoria & Pekin Union Ry. Co*., 321 U.S. 29 (1944), the Supreme Court approved a similar jury verdict involving another unwitnessed accident. There, the Supreme Court noted "there was no direct evidence as to [decedent's] precise location at the time he was killed," acknowledging conflicting circumstantial evidence on that point. *Id*. at 31. Pointedly, the Court observed that it is not the appellate court's function "to search the record for conflicting circumstantial evidence in order to take the case away from the jury on a theory that the proof gives equal support to inconsistent and uncertain inferences." *Id*. at 35 (citations omitted).

A FELA case cannot be taken away from a jury "unless there is absolutely no reasonable basis for a jury to find for the plaintiff." *Syverson*, 19 F.3d at 828. Indeed, [a] review of the decisions of the Supreme Court with reference to the integrity of the jury's function in these cases keeping in mind the purposes of the Act and the liberal construction given it, teaches that a trial court is justified in withdrawing such issues from the jury's consideration only in those extremely rare instances where there is a zero probability either of employer negligence or that any such negligence contributed to the injury of an employee. *Pehowic v. Erie*

*Lackawanna R.R. Co.*, 430 F.2d 697, 699-700 (3d Cir. 1970); see also *Lynch v. Ne. Reg'l Commuter R.R. Corp.*, 700 F.3d 906, 915 (7th Cir. 2012) (explaining that the FELA "vests the jury with broad discretion to engage in common sense inferences regarding issues of causation and fault"); *Pierce v. S. Pac. Transp. Co.*, 823F.2d 1366, 1370 (9th Cir. 1987) ("[T]he jury's power to engage in inferences is significantly broader [under the FELA] than in common law negligence actions").

LIA's statutory language requires a railroad to "use on its railroad line" locomotives whose "parts and appurtenances . . . are in proper condition and safe to operate without unnecessary danger of personal injury." 49 U.S.C. § 20701. LIA's duty is absolute, and a plaintiff does not need to prove negligence, but rather is entitled to recover based solely on the railroad's violation of the LIA, See *Brady v. Terminal R.R. Ass'n*., 303 U.S. 10, 15 (1938) (liability is not based on carrier's negligence, but on whether it violated railroad safety statute).

However, well-established law makes clear that the presence of a foreign substance on a locomotive that creates an unnecessary danger of personal injury is also a violation of the LIA. Indeed, the seminal U.S. Supreme Court case on the issue, *Lilly v. Grand Trunk Western R.R. Co.*, 317 U.S. 481 (1943), rejected a railroad's argument that the LIA only encompasses mechanical and manufacturing defects.

*Lilly* provides a sound analysis with respect to whether a foreign substance on a locomotive is a basis for a LIA claim. The plaintiff in *Lilly* was injured when he fell from the top of a locomotive tender that was covered with ice. Id. at 483. His LIA claim was based on the presence of ice on the tender creating an "unnecessary peril to life and limb . . . ." *Id*. at 484. There was also a second LIA claim based on a mechanical defect (cracked and worn collar on the tender's manhole) that created the unnecessary risk of injury. *Id*. The jury answered a special interrogatory where it found there was no mechanical defect. *Id*. The plaintiff appealed the state court of appeals' decision holding that the LIA defect only includes a locomotive's mechanical defect. *Id*.

In reversing the lower court's decision, *Lilly* makes clear that the LIA is to be liberally construed in the light of its prime purpose to protect employees by requiring use of safe equipment. *Id*. at 486; accord *Herold v. Burlington Northern, Inc.*, 761 F.2d 1241, 1246 (8th Cir. 1985); *St. George v. BNSF Ry. Co.*, 60 F.Supp.3d 1016, 1028 (D. Minn. 2014). *Lilly* goes on to reason that "[t]he use of a tender, upon whose top an employee must go in the course of his duties, which is covered with ice seems to us to involve 'unnecessary peril to life or limb' – enough so as to permit a jury to find that the [LIA] has been violated." *Id*. Last, *Lilly* rejects the argument that the LIA "covers only defects in construction or mechanical operation and affords no protection against the presence of dangerous objects or foreign matter," because it construes the Act too narrowly. *Id*. at 487-88 (footnote omitted).

Another case providing useful insight to the presence of a foreign substance establishing liability under the LIA is *Whelan v. Penn Central Co.*, 503 F.2d 886 (2nd Cir. 1974), a case where the Second Circuit struggled somewhat applying *Lilly* to the evidence but ultimately affirmed a jury's finding that an icy condition on a locomotive step established the railroad's violation.

The facts of the case involved the plaintiff suffering injuries as he descended the steps of a locomotive. The description of the incident included "as [the plaintiff] came down the steps, the train was proceeding on a slight downgrade at about three miles per hour. His left foot slipped as it touched the bottom step, and so did his hand when he tried to break his fall by using the hand grabirons of the step assembly." Id. at 888.

The railroad appealed the jury's finding of a LIA violation by first arguing there was insufficient evidence supporting the finding. *Id*. at 889. The reviewing court rejected the evidence based on the evidence showing the presence of ice on the steps and grabirons for several hours prior to the incident. *Id*.

The second issue raised by the railroad was whether the district court's charge to the jury was proper, which provides instruction in the pending case. The district court instructed the jury:

> Under the law the presence of foreign matter, such as ice, can give rise to liability under the Act. But, again, with respect to the ice as with respect to everything else, you are to apply the

criterion of the statute and that is whether the steps by virtue of the ice or otherwise were made improper in their condition, were made unsafe to operate such a manner as to create unnecessary peril to life or limb.

*Id.*

The railroad argued that the instruction was improper because the LIA "is not violated by slippery conditions caused by the weather . . . ." *Id*. *Whelan* notes that the railroad's "argument has some force," but went on to reject the argument based in part on *Lilly*. Id. at 889-90. In holding that the instruction was proper, *Whelan* agreed that "[t]he language of the [LIA], does not suggest . . . a Congressional purpose to impose on railroads an absolute duty to keep the surfaces of locomotives and tenders as free from foreign matter at all times, as an operating room before surgery." *Id*. at 890. But the Second Circuit went on to conclude that foreign substances included both oil and grease, and "also to substances as unavoidable in railroad operations as snow and ice." *Id*. *Whelan* concluded its remarks using interesting phrases:

> Perhaps neither ice nor rain nor heat nor gloom of night should stay [a commuter train's] course, but it may well be reasonable to curtail the [plaintiff's use of a locomotive used in] switching operations temporarily – until some product of modern science or remedy of ancient prudence can be sprayed, spread or hooked up so as to alleviate the danger – where weather conditions make that work so obviously hazardous. The carrier in any case is in a better position than anyone else to balance the relative costs of meeting Lilly's strict demands and compensating an employee injured as was [plaintiff].

Id. at 890-91 (emphasis added).

The application of *Whelan* is twofold. The first is that a well-crafted jury instruction provides a jury with the required knowledge to apply LIA law to the evidence when determining liability under the federal act. The second is that weather conditions along with other conditions, such as oil and grease on the handrail and platform, may combine to establish LIA liability. Indeed, LIA's causation standard is a relaxed standard compared to common-law negligence, and the element is satisfied " 'if the injury resulted in whole or in part' from the violation." *Carter v. Atlanta & St. Andrews Bay Ry.*, 338 U.S. 430, 434-35 (1949)).

Because the evidence of causation in unwitnessed cases is often entirely circumstantial and the result must depend on the inference to be drawn from the circumstantial evidence, the Supreme Court stated that it

is not the function of a court to search the record in such cases for conflicting circumstantial evidence "to take the case away from the jury on the theory that the proof gives equal support to inconsistent and uncertain inferences." *Tennant v. Peoria & Pekin Union Ry.*, 321 U.S. 29, 35 (1944).

All of the foregoing caselaw is consistent with, and part of, the United States Supreme Court's repeated admonitions that "Congress vested the power of decision in [FELA] actions exclusively in the jury in all but the infrequent cases where fair-minded jurors cannot honestly differ whether fault of the employer played any part in the employee's injury." *Rogers*, 352 U.S. at 510 (footnote omitted); see also, e.g., *Gallick*, 372 U.S. at 115 (on issues of negligence and causation, "'[t]he very essence of [the jury's] function is to select from among conflicting inferences and conclusions that which it considers most reasonable'") (quoting *Tennant*, 321 U.S. at 35) (collecting cases); *Schulz v. Pennsylvania R.R. Co.*, 350 U.S. 523, 526 (1956) (concluding, in a Jones Act case, there was sufficient evidence of causation to send the case to the jury even though decedent "might have fallen on a particular spot where there happened to be no ice, or that he might have fallen from the one boat that was partially illuminated by shore lights," and emphasizing that "[f]act finding does not require mathematical certainty" and that "[j]urors are supposed to reach their conclusions" from "proof of circumstances from which inferences can fairly be drawn"); cf. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986) ("If reasonable minds could differ as to the import of the evidence, . . . a verdict should not be directed.") (citing *Wilkerson v. McCarthy*, 336 U.S. 53, 62 (1949)).

The evidence in the pending case certainly permits a reasonable juror to infer that the water due to weather conditions combined with the oil on the handhold and walkway, documented to have existed two days earlier and confirmed by plaintiff to exist on a regular basis as "wet exhaust" i.e. uncombusted oil droplets released with a locomotive's emissions, caused Plaintiff to lose his grip on the handholds and his foot to slip from the walkway.

The same conclusion reached in *Lilly* that the ice on top of the locomotive tender establishes liability under the LIA applies in Plaintiff's case here. Plaintiff testified that he had both hands on the handholds firmly,

and nonetheless fell to the ground when his foot slipped on the walkway edge above the steps. Defense counsel went to lengths to question how that could occur. Slippery handrails stemming from oil falling onto the handrails and walkways, as was documented to have existed just two days earlier, explains just that. Layered on top of that is the testimony that oil droplets regularly emit with the exhaust and fall on the locomotive. Combined with the supervisor's testimony that there should be documentation of any cleanup of the oil if it occurred, certainly allows a reasonable juror to conclude that there was oil on Locomotive 374 at the time of plaintiff's fall. Additionally, the photograph of the walkway edge where plaintiff was coming down which shows a glistening patch near the edge where plaintiff would have had to stand to come down the stairs reasonably allows a juror to conclude that there was also oil on the walkway. Based on this evidence, there is a jury question with respect to whether the presence of the foreign substance created an unnecessary risk of harm.

WHEREFORE, plaintiff submits that the railroad's motion should be denied.

DATED: GARDEN CITY, NEW YORK
March 4, 2020

        Flynn & Wietzke, PC
        Attorneys for Plaintiff
        1205 Franklin Avenue
        Garden City, NY 11530
        (516) 877-1234

By: _____
        MARC WIETZKE

TO: T. Mark Herlihy, Esq.
     Herlihy, Thursby & Herlihy, LLP
     PO Box 121220
     Boston, MA 02112

## **CERTIFICATE OF SERVICE**

      I hereby certify that on March 4, 2020, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                           /s/ Marc Wietzke
                           Marc Wietzke