UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GENE SEBASTINO,<br><br>    Plaintiff,<br><br>    v.<br><br>SPRINGFIELD TERMINAL RAILWAY CO,<br><br>    Defendant. | Civil Action No. 16-30007-MGM |

MEMORANDUM AND ORDER REGARDING DEFENDANT'S RENEWED MOTION
FOR JUDGMENT AS A MATTER OF LAW, AND/OR MOTION FOR NEW TRIAL
PURSUANT TO FEDERAL RULE CIVIL PROCEDURE 59(a) AND (e)
(Dkt. No. 103)

March 24, 2021

MASTROIANNI, U.S.D.J.

I. INTRODUCTION

After a three-day trial, from March 2 to March 4, 2020, a jury returned a verdict for Plaintiff Gene Sebastino for negligence and violation of statutory duties under the Federal Employer's Liability Act ("FELA"), 45 U.S.C. § 51 *et seq*. It awarded damages of $676,689.77 against Defendant Springfield Terminal Railway Co. Defendant has moved for judgment as a matter of law, a new trial, and remittitur. For the reasons discussed below, the court will deny these motions.

II. BACKGROUND

Plaintiff Sebastino was employed by Defendant Springfield Terminal Railway on October 9, 2015, when he fell from Locomotive 374 as he attempted to climb down its steps. He testified that his foot at the top of the steps slipped, causing him to fall and land on the ground onto his tailbone and then back. He experienced pain and felt he could not move from his position. An ambulance was called, and he was taken to the hospital.

A central factual dispute was whether oil was present on the locomotive by the steps, which would be a basis for finding Defendant negligent. Photographs were taken and inspections were conducted by other railroad employees after the incident. The photographs showed wet spots on the platform at the top of the stairs. Railroad employees testified that the wetness was due to water from rain. Plaintiff himself testified that he did not recall seeing oil on the platform or the steps at the time of his fall. Similarly, during an interview the day after the incident, Plaintiff had reported oil on other parts of the locomotive, but not by the steps. In addition, when the court allowed Plaintiff to re-open his case after Defendant had rested, Plaintiff testified he had previous experience with slipping both on oil and water and each felt different underfoot. He said that the slip during the incident had felt like oil. The evidence also included an ambulance call sheet, which indicated Plaintiff had told ambulance workers at the time they arrived on the scene that he had slipped on oil. A record by Plaintiff's primary doctor, who saw Plaintiff the week after the incident, indicated that Plaintiff had slipped on grease. Plaintiff's counsel also presented evidence that oil is commonly present on locomotives because exhaust oil is expelled out of the stacks of locomotives.

Also presented at trial was the fact that two days earlier, on October 7, an inspection had been performed that found oil present on the handrails and walkways of Locomotive 374, which was reflected in an inspection report of the same date. A railroad engineer's testimony indicated that the oil had been wiped down. However, there was no formal report that recorded the cleanup of the oil. The next report to follow was dated October 9, which was written shortly before midnight and about five hours after Plaintiff's fall.[1] This was despite the fact Defendant was required, under the Locomotive Inspection Act, to inspect each of its locomotives in use at least once a day and to

---

[1] The parties stipulated to the fact that Plaintiff put Defendant on notice of his injuries and requested Defendant to preserve all inspection reports for Locomotive 374 about one month after the incident, on November 5, 2015.

maintain daily inspection records.

Plaintiff testified that after the incident he experienced pain in his lower back that radiated down to his legs. He continued to experience pain, and at times was unable to walk due to it. Plaintiff saw a couple of orthopedic specialists and was treated with spinal injections, a surgery in 2018, and a second surgery in 2019. Until his second surgery, Plaintiff had been under physical restrictions from lifting, bending, and other rigorous activity. After the second surgery, Plaintiff was cleared to work full duty, although by trial Defendant had still not brought Plaintiff back to work. Evidence was also presented that after the fall from the locomotive, Plaintiff helped his ailing father with his auto business, including doing light repairs and driving a tow truck. Plaintiff testified he did not make any money from this work.

The jury found Defendant liable for injuries caused to Plaintiff due to negligence in failing to provide a safe place to work and violation of statutory duties under the Locomotive Inspection Act. The jury awarded Plaintiff $326,689.77 for loss of earnings, $300,000 for past pain and suffering, and $50,000 for future pain and suffering.

### III. STANDARDS FOR MOTION FOR JUDGMENT AS A MATTER OF LAW, MOTION FOR A NEW TRIAL, AND MOTION FOR REMITTITUR

Rule 50 "is one of the judicial control devices provided by the Federal Rules of Civil Procedure so that the district court may enforce rules of law. It allows the court to remove from the jury's consideration cases or issues when the facts are sufficiently clear that the law requires a particular result." 9B C. Wright & A. Miller, Federal Practice and Procedures § 2521 (3d ed.); *Weisgram v. Marley Co.*, 528 U.S. 440, 447–48 (2000). Scrutiny of the jury verdict is "tightly circumscribed." *Suero-Algarin v. CMT Hospital Hima San Pablo Caguas*, 957 F.3d 30, 37 (1st Cir. 2020) (internal quotation marks omitted). A "verdict should be set aside only if the jury failed to reach the *only* result permitted by the evidence." *Lestage v. Coloplast Corp.*, 982 F.3d 37, 46 (1st Cir. 2020). "[F]acts are construed in the light most favorable to the jury verdict," and "any inferences are drawn

in favor of the non-movant." *Blomquist v. Horned Dorset Primavera, Inc.*, 925 F.3d 541, 546 (1st Cir. 2019). The court does not evaluate the credibility of witnesses or the weight of the evidence. *Id.*

Under Federal Rule of Civil Procedure 59, the court may override a jury verdict and order a new trial "if the verdict is against the law, against the weight of the credible evidence, or tantamount to a miscarriage of justice." *Teixeira v. Town of Coventry ex rel. Przybyla*, 882 F.3d 13, 16 (1st Cir. 2018) (internal quotation marks omitted). "A district court's power to grant a motion for a new trial is much broader than its power to grant a JMOL" under Federal Rule of Civil Procedure 50. *Jennings v. Jones*, 587 F.3d 430, 436 (1st Cir. 2009). The court is free to independently weigh evidence. *Id.* However, the court "cannot displace a jury's verdict merely because [it] disagrees" or "because a contrary verdict may have been equally . . . supportable." *Id.* (internal quotation marks omitted). The "remedy of a new trial is sparingly used, and then only where there would be a miscarriage of justice and where the evidence preponderates heavily against the verdict." *U.S. v. Merlino*, 592 F.3d 22, 32 (1st Cir. 2010) (internal quotation marks omitted).

In addition, it is "within the district court's discretion to order a remittitur if such an action is warranted in light of the evidence adduced at trial." *Climent-Garcia v. Autoridad de Transporte Maritimo y Las Islas Municipio*, 754 F.3d 17, 21 (1st Cir. 2014) (internal quotation marks omitted). "To warrant remittitur, however, the award must exceed any rational appraisal or estimate of the damages that could be based upon the evidence before it." *Id.* (internal quotation marks omitted). The evidence is assessed in the light most favorable to the jury's award, drawing all reasonable inferences in support of the award. *Id.*

## IV. DISCUSSION

Defendant's motion for judgment as a matter of law centers on the argument that there was insufficient evidence for a reasonable jury to conclude that oil was present on or next to the steps of the locomotive. The court disagrees. The jury had evidence that the presence of oil was a common

occurrence on locomotives, the area from which Plaintiff slipped was wet, oil had recently been found on the handrails and walkways of Locomotive 374, and no formal record was made of the oil being cleaned. In fact, daily inspection records were missing from around the time of the incident, despite Defendant's legal duties to maintain such records, and the court instructed the jury that it was permitted to draw an adverse inference regarding such missing evidence. In addition, the jury had evidence of Plaintiff's belief, contemporaneous with the incident, that he had slipped on oil as communicated to the medical workers who responded to the emergency. The evidence of oil was wholly circumstantial rather than direct, but that does not mean it was insufficient. *Rogers v. Missouri Pac. R. Co.*, 352 U.S. 500, 508 n.17 (1957) (noting, in a FELA case, that "[c]ircumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence."). While there was evidence weighing against the presence of oil, as Defendant points out, it is not the court's role to independently reweigh the evidence where a reasonable jury could conclude as it did based on the evidence, as is the case here.

      Defendant also takes issue with the fact the court allowed Plaintiff to reopen his case. In deciding whether to reopen the record, a court should consider "whether (1) the evidence sought to be introduced is especially important and probative; (2) the moving party's explanation for failing to introduce the evidence earlier is bona fide; and (3) reopening will cause no undue prejudice to the non-moving party." *Davignon v. Hodgson*, 524 F.3d 91, 113–14 (1st Cir. 2008). Plaintiff's request to reopen his case or present a rebuttal arose out of the fact Defendant did not put a particular railroad employee, Norman Yelin, on the stand during the presentation of its case, which was perhaps due to a misunderstanding between counsel. The court allowed Plaintiff's counsel to read in the witness's deposition testimony and, in addition, to call Plaintiff back to the stand. With respect to the introduction of Yelin's deposition testimony, the court finds it was appropriate considering the dispute on what counsel had agreed to regarding his availability and taking of the stand. With respect

to Plaintiff's additional testimony, the court finds there was no prejudice to Defendant. Even disregarding Plaintiff's additional testimony, the court finds there was sufficient evidence for the jury to conclude that oil was present and caused Plaintiff's fall.

Accordingly, the court finds no reason to order judgment as a matter of law for Defendant. Nor does the court see any reason to grant a new trial as it does not find the verdict to be contrary to the clear weight of the evidence.

Finally, the court denies the motion for remittitur. The evidence was sufficient to support the damages awarded by the jury. The court agrees that the award appears to be on the high end, but not so much that it exceeds any rational appraisal or estimate of the damages. Defendant's argument regarding lost earnings rests on the fact that Plaintiff worked for his father's business, showing he was not totally disabled from gainful employment and could have mitigated his damages. Therefore, Defendant argues, it was against the clear weight of the evidence for the jury to award the full amount Plaintiff would have earned as Defendant's employee without any deduction. Given that it was Defendant's burden to prove issues of mitigation, the court is not sufficiently persuaded by the generalities of Defendant's arguments to second guess the jury's assessment. Defendant's argument regarding damages awarded for future pain and suffering focuses on his doctor's testimony that Plaintiff appeared to have made a complete recovery by September 2019. Plaintiff's response points to his testimony that he still gets sore when standing for a long time and sometimes feels achy and stiff, and the fact he is expected to live for another thirty to forty years. The court is satisfied that the jury's award is within reason.

## V. CONCLUSION

For the reasons set forth above, Defendants' renewed motion for judgment as a matter of law, new trial, and remittitur (Dkt. No. 103) is DENIED.

It is So Ordered.

                                                 /s/ Mark G. Mastroianni
                                                MARK G. MASTROIANNI
                                                United States District Judge